IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
DEC 0 6 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

| | |
|---|---|
| JOHN TIMOTHY UNDERWOOD, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 7:06cv00706 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | By: Samuel G. Wilson |
| Respondent. ) | United States District Judge |
| ) | |

This is a motion pursuant to 28 U.S.C. § 2255 by John T. Underwood challenging the validity of his guilty plea and sentence for possessing with intent to distribute a mixture or substance containing 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and carrying and possessing a firearm in relation to and in furtherance of that offense in violation of 18 U.S.C. § 924(c), and on a subsequent occasion carrying and possessing a firearm in relation to and in furtherance of the crime of possessing a detectable amount of methamphetamine with intent to distribute. Underwood claims that he was denied the effective assistance of counsel because counsel advised him not to appeal despite the fact that the offenses to which he pled were not "felony crimes indictable by a grand jury," that the prosecuting attorney was guilty of prosecutorial misconduct because it procured an indictment for acts that are not crimes, and that his conviction violates the Constitution because it is based on acts that are not criminal offenses. The court finds that Underwood's claims are frivolous. The acts alleged in the indictment and marshaled in support of Underwood's guilty plea are offenses against the United States, and by pleading guilty pursuant to a favorable plea agreement

Underwood likely avoided an even longer sentence. Under the circumstances, his counsel's advice was neither deficient nor prejudicial. Accordingly, the court will deny his motion.

I.

On November 22, 2004, a confidential informant attempted to purchase methamphetamine from Underwood's sister and neighbor, Stephanie Lane. Lane's young accomplice, Joshua Roop, went next door to Underwood's residence and returned with 3.1 grams of methamphetamine which Lane sold to the informant for $230. The following day state officers executed state issued search warrants on Lane's and Underwood's residences. The search of Lane's residence netted digital scales, drug paraphernalia, marijuana, and currency. When the officers entered Underwood's residence, Underwood was actually holding a handgun in one hand and an "eightball" of methamphetamine in the other. The search of Underwood's residence netted a total of 110.79 grams of methamphetamine, video surveillance equipment, a police scanner, drug paraphernalia, digital scales, $648 in cash, tally sheets, 31.7 grams of marijuana, suspected psilocybin mushrooms, and 37 firearms, including an unregistered short-barreled shotgun. Underwood admitted to authorities that he had been selling approximately 4 1/2 ounces of methamphetamine weekly for three years.

State authorities charged Underwood and his accomplices with various state offenses. They posted bond, were released, but continued the operation of their narcotics business. Ultimately, a federal search warrant was issued for Underwood's residence, and a warrant was issued for his arrest. A task force of state and federal agents arrested him after he left his residence, and he was carrying a loaded .44 magnum revolver. A search of his residence produced a shotgun, a rifle, a sub-machine gun receiver, ammunition, 3 grams of

2

methamphetamine packaged for sale, 4.1 grams of marijuana, untaxed liquor, and drug paraphernalia. A search of the vehicles and outbuildings on the premises netted a semi-automatic pistol and untaxed liquor.

A federal grand jury returned a multi-count indictment against Underwood and his accomplices. It charged Underwood in nine different counts. Count One charged him with conspiracy to distribute and possess with intent to distribute a mixture or substance containing more than 500 grams of methamphetamine in violation of 21 U.S.C. § 846; Count Two charged him with distributing or possessing with intent to distribute a mixture or substance containing a detectable amount of methamphetamine on November 22, 2004, in violation of 21 U.S.C. § 841(a)(1); Count Three charged him with distributing or possessing with intent to distribute a mixture or substance containing more than 50 grams of methamphetamine on November 23, 2004, in violation of 21 U.S.C. § 841(a)(1); Count Four charged him with carrying or possessing a firearm in relation to and in furtherance of Count Three on November 23, 2004, in violation of 18 U.S.C. § 924(c); Count Five charged him with possession of unregistered, short-barreled firearm in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871; Count Six charged him with possession of a firearm on November 23, 2004, while he was an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3); Count Eight charged him with committing that offense again on April 4, 2005; Count Nine charged him with distributing or possessing with intent to distribute a mixture or substance containing a detectable amount of methamphetamine on April 4, 2005, in violation of 21 U.S.C. § 841(a)(1); and Count Ten charged him with carrying or possessing a firearm in relation to it in furtherance of Count Nine on April 4, 2005, in violation of 18 U.S.C. § 924(c).

Underwood entered into a plea agreement with the United States in which he agreed to plead guilty to Counts three, nine, and ten and to waive his right to appeal and to collaterally attack his plea and sentence. In exchange the government agreed to dismiss the remaining counts of the indictment against him, not to seek a role adjustment, to recommend that the court sentence him at the lower end of the guideline range, and to give him an opportunity to earn substantial assistance. The agreement also acknowledged, as of the date he signed it – August 17, 2005, that he was fully satisfied with the advice his attorney had given him. He agreed that he would "make known to the Court no later than at the time of sentencing any dissatisfaction or complaint" he had with his attorney's representation and waived any ineffective assistance claim known if not raised at the time of sentencing.

Underwood, Roop, and Lane pled guilty on the same date Underwood signed his plea agreement. The court conducted a thorough plea colloquy, during which Underwood affirmed under oath, among other things, that he received a copy of the indictment, that he had discussed the charges and his case with his counsel, that he was fully satisfied with his counsel's representation, that he had read the entire plea agreement before he signed it, that he understood everything in the agreement, that no one had made any other or different promise or assurance to him of any kind in an effort to induce him to enter the plea, that no one had forced him to enter the plea, that he understood that Count Three carried a possible 40 year sentence with a mandatory minimum of five years, that he understood that he would receive mandatory consecutive sentences of five years on Count Four and 25 years on Count Ten, that the court was not bound to follow the sentencing recommendations in his plea agreement, that the court would not permit him to withdraw his plea if the sentence was more severe than he expected, that he

4

was waiving his right to appeal and his right to collaterally attack his plea and sentence, and that he was pleading guilty because he was in fact guilty. The court then heard a summary of the exceptionally strong incriminating evidence against Underwood, and finding that Underwood was fully competent and capable of entering an informed plea and that his plea was knowing and voluntary, the court accepted it.[1]

Underwood's presentence report held him accountable for only 103.6 grams of methamphetamine, gave him no role adjustment, and gave him a three level reduction for acceptance of responsibility. This resulted in a guideline range on Count Three of 60 to 63 months based on Underwood's criminal history category—II. The probation officer who prepared Underwood's presentence report noted, however, that Underwood distributed more than 19 kilograms of methamphetamine based on Underwood's own admissions. Therefore, but for the stipulation in Underwood's plea agreement, Underwood's base offense level for Count Three would have been 38, pursuant to United States Sentencing Guideline § 2D1.1, rather than 26. Even with a three level decrease for acceptance of responsibility, his guideline range would have been 188 to 235 months, and had the court found that he was "an organizer, leader, manager, or other supervisor in a criminal activity," and given him a two level increase, his guideline range would have been 235 to 293 months. Instead, the court followed the favorable stipulations and

---

[1] Following the court's acceptance of Underwood's and his codefendants' pleas, Underwood removed a secreted razor blade and began to slice his wrists. Quick thinking and acting courtroom security subdued him preventing further injury and blood loss. He was placed on suicide watch, and the court committed him for a competency determination pursuant to 18 U.S.C. § 4241(a). The report contained no suggestion of incompetency, and the court accordingly found him competent. Nevertheless, the court offered him the opportunity to withdraw his plea, but he declined.

recommendations in Underwood's plea agreement and sentenced him to 60 months on Count Three (the mandatory minimum for that count), 60 months consecutive on Count Four (the mandatory minimum for that count), and 300 months consecutive on Count Ten (the mandatory minimum for that count), for a total sentence of 420 months.

After sentencing Underwood the court apprised him:

> You have waived the right to appeal your sentence and that waiver is binding unless the sentence exceeds the statutory maximum or is based on a constitutionally impermissible factor, and if you undertake to appeal despite your waiver, you may lose the benefits of your plea agreement. If a right of appeal does exist, a person who is unable to pay the cost of an appeal may apply for leave to appeal without prepayment of such cost. Any Notice of Appeal must be filed within 10 days of the entry of judgment or within 10 days of a Notice of Appeal by the Government. If requested, the clerk will prepare and file a Notice of Appeal on your behalf.

## II.

Underwood claims that he was denied the effective assistance of counsel because counsel advised him to waive his right to appeal and not to appeal despite the fact that the offenses to which he pled were not "felony crimes indictable by a grand jury." Underwood's premise, however, that possession of methamphetamine with intent to distribute and carrying and possessing a firearm in furtherance of that endeavor are not federal offenses, is frivolous and the court dismisses the claim sua sponte because Underwood cannot show that his counsel's advice was deficient and prejudicial.

Under the two-prong standard articulated by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), to establish ineffective assistance of counsel in connection with a guilty plea, the petitioner must show not only that his attorney's performance was inadequate, but also that he was prejudiced by that performance --- that "there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Here, Underwood cannot demonstrate that his counsel's legal advice not to appeal, or in the first instance advising him to enter the plea agreement waiving his right to appeal, is deficient. Indeed, by following his counsel's advice and entering into the plea agreement, Underwood likely avoided a much greater guideline sentence. Since he cannot show that his counsel's advice was inadequate and prejudicial, the court dismisses his ineffective assistance claim

### III.

Underwood also claims that the prosecuting attorney was guilty of prosecutorial misconduct and that the court sentenced him to an unconstitutional sentence. The premise of these claims is the same frivolous premise as the premise of his effective assistance claim—that his prosecution and sentence are based on acts that are not criminal offenses. Accordingly, the court dismisses them.

### IV.

Underwood, who is not an uneducated man stubbornly states, apparently for effect: "my lawyer done me wrong." Yet, here the facts are equally as stubborn, and his lawyer is simply that, a lawyer. He is not a magician. He cannot make the stubborn facts disappear.

For the reasons stated, the court denies Underwood's motion for § 2255 relief.

**ENTER:** This December 6, 2006.

_____
UNITED STATES DISTRICT JUDGE